**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**KASSIM MOUZONE,**

**Plaintiff,**

**v.**

**WEST MARKET ASSOCIATES, *et al.*,**

**Defendants.**

**Civil Action No.: 25-6317 (ES) (JSA)**

**OPINION**

**SALAS, DISTRICT JUDGE**

Before the Court are two motions to dismiss *pro se* Plaintiff Kassim Mouzone's ("Plaintiff") Complaint (D.E. No. 1-1 ("Complaint" or "Compl.")): (i) defendant Stavi Corporation's ("Stavi") motion to dismiss, (D.E. No. 13 ("Stavi Motion" or "Stavi Mot.")); and (ii) defendant McDonald's Corporation's ("McDonald's") motion to dismiss, (D.E. No. 44 ("McDonald's Motion" or "McDonald's Mot.")).[1] Having considered the parties' submissions and deciding this matter without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** the Motions. The Complaint is **DISMISSED** *without prejudice*.

[1] Stavi asserts that it was improperly named as "West Market Associations" in the Complaint. (*See* D.E. No. 13-1 ("Stavi Mov. Br.") at 1).

# I. BACKGROUND[2]

## A. Factual Background

This is a racial discrimination action arising from an incident that occurred at a McDonald's restaurant in Newark, New Jersey. (Compl. at 2).[3] Plaintiff is "an African American male and a resident of Newark, New Jersey." (*Id.* at 3). On December 21, 2023, Plaintiff was working as an Uber Eats driver—in a role he describes as an independent contractor for Uber—and attempted to pick up a pre-paid Uber Eats order for an Uber customer. (*Id*. at 2). Plaintiff alleges that, despite being the only customer present, the restaurant employees "ignored him, refused to acknowledge his presence, and deliberately withheld the order." (*Id.*). Plaintiff states that he noticed that "all the McDonald's employees present behind the counter were Hispanic and were engaged in a conversation in Spanish." (*Id.* at 4). Plaintiff waited approximately five to ten minutes without any recognition from the restaurant employees and attempted to get their attention by waiving his hands and saying, "[h]ello!" to the employees. (*Id.*). When he questioned why he was being ignored, the restaurant supervisor, "a Hispanic female employee," refused to provide the order and stated, "[c]ancel your order because we're not giving it to you." (*Id.*). The supervisor addressed him with a "dismissive and hostile tone." (*Id.*). Plaintiff also alleges that he "overheard an employee say, 'stupid Black,' a racially offensive remark directed at him" and "made in a manner intended for him to hear." (*Id.* at 4). As a result of this incident, Plaintiff was unable to complete the Uber Eats delivery, which negatively impacted his earnings and denied the customer their order. (*Id.*). Plaintiff reported the incident to Uber, McDonald's corporate customer service, and

---

[2] The factual background is taken from the allegations in the Complaint. For purposes of the instant Motions, the Court accepts Plaintiff's factual allegations as true and draws all inferences in the light most favorable to him. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] All citations to page numbers in Plaintiff's Complaint refer to the page numbers generated by the CM/ECF system.

the McDonald's franchise system, and filed a formal complaint with the New Jersey Division on Civil Rights. (*Id.*).

**B. Procedural History**

On February 5, 2025, Plaintiff filed this action in New Jersey Superior Court. (*See* Compl.). In his Complaint, Plaintiff brings claims for: (i) discrimination in public accommodations in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 et seq. ("NJLAD"); (ii) hostile environment under the NJLAD; (iii) disparate treatment under the NJLAD; (iv) intentional infliction of emotional distress ("IIED"); (v) negligent infliction of emotional distress ("NIED"); (vi) breach of contract; (vii) violation of 42 U.S.C. § 1981 ("Section 1981"); and (viii) violation of 42 U.S.C. § 2000a ("Title II"). (*See generally* Compl.). Plaintiff seeks compensatory damages, punitive damages, injunctive relief, attorney's fees and costs. (*Id.* at 8).

On May 30, 2025, Defendant Stavi removed this action to the United States District Court for the District of New Jersey. (D.E. No. 1). On June 5, 2025, Plaintiff filed a Motion to Remand. (D.E. No. 5). On June 20, 2025, Stavi filed a Motion to Dismiss Plaintiff's Complaint. (Stavi Motion). On June 21, 2025, Plaintiff filed a brief in opposition to Stavi's Motion, (D.E. No. 16), Stavi filed a reply brief, (D.E. No. 25), and Plaintiff filed a sur-reply, (D.E. No. 26). On July 22, 2025, the Court administratively terminated Stavi's motion to dismiss pending the outcome of Plaintiff's motion to remand. (D.E. No. 28). The Court ordered that Stavi could reinstate this motion following the resolution of the motion to remand by filing a new notice of motion cross-referencing the initial motion. (*Id.*). On October 6, 2025, the Hon. Jessica S. Allen, United States Magistrate Judge, issued a Report and Recommendation ("R&R") recommending that the Undersigned deny Plaintiff's Motion to Remand. (D.E. No. 30). On October 23, 2025, the Court

adopted the R&R in full. (D.E. No. 31). On October 31, 2025, Stavi filed a notice to reinstate its motion to dismiss, (D.E. No. 32), referencing the originally filed motion to dismiss, (Stavi Motion). Plaintiff then filed a new opposition to the motion to dismiss, (D.E No. 33), Stavi filed a reply, (D.E. No. 36-1 ("Stavi Reply")), and Plaintiff filed a sur-reply, (D.E. No. 39). On December 15, 2025, Defendant McDonald's filed a motion to dismiss Plaintiff's Complaint. (D.E. No. 44). Plaintiff filed an opposition, (D.E. No. 45), Defendant filed a reply in support of its motion, (D.E. No. 46), and Plaintiff filed a sur-reply, (D.E. No. 47).[4] Defendants' motions to dismiss, (D.E. Nos. 13 & 44), are now fully briefed and ripe for resolution.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*,

[4] The Court notes that Plaintiff has filed several sur-replies in this matter, (D.E. Nos. 26, 39 & 47), without first seeking leave of Court, in violation of Local Civil Rule 7.1(d)(6). ("No sur-replies are permitted without permission of the Judge to whom the case is assigned."). In light of Plaintiff's *pro se* status, the Court has considered all of his submissions to date. Going forward, however, the Plaintiff shall comply with the Federal Rules of Civil Procedure and the Local Rules of this District. Plaintiff must, for instance, request leave of Court before filing a sur-reply. In the future, the Court may strike or disregard any unauthorized submissions.

629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotations omitted). But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, courts must construe complaints liberally in favor of a *pro se* plaintiff. *See Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training") (internal quotations and citations omitted). That said, the Court is not required "to credit bald assertions or legal conclusions: '[p]ro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Tucker v. Univ. of Sci., Arts & Tech., Coll. of Med.*, No. 23-23329, 2025 WL 1384313, at *1 (D.N.J. May 12, 2025) (alteration in original) (quoting *Griffin v. State Dep't of Hum. Servs.*, No. 18-14697, 2019 WL 3369783, at *2 (D.N.J. July 26, 2019)). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Griffin*, 2019 WL

3369783, at *2 (internal citations omitted).

**B. Rule 12(b)(5)**

Rule 12(b)(5) permits courts to dismiss a case for insufficient service of process. *Ceus v. N.J. Laws. Serv., LLC*, No. 19-17073, 2020 WL 1986483, at *1 (D.N.J. Apr. 27, 2020). Rule 4 provides the requirements for proper service. *Id.* The party asserting validity of service bears the burden of proof on the issue. *Id.* (citing *Grand Ent. Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993)).

District courts have broad discretion when considering whether to dismiss a complaint for failure to effectuate service. *Id.* at *2. Courts are "'reluctant to dismiss an action' when a plaintiff acts in good faith but fails to effectuate proper service." *Id.* (quoting *Ramada Worldwide Inc. v. Shriji Krupa*, LLC, No. 07-2726, 2013 WL 1903295, at *6 (D.N.J. Apr. 17, 2013)). Furthermore, courts regularly consider a plaintiff's *pro se* status when exercising discretion in regard to a motion to dismiss under Rule 12(b)(5). *Id.*

**III. DISCUSSION**

**A. Stavi Corporation**

Stavi argues that the Court should dismiss Plaintiff's claims on two grounds. Stavi argues that Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Complaint fails to state a claim for which relief can be granted. (Stavi Mov. Br. at 15). Stavi also argues that Plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) because service was improper. (*Id.* at 8).

**i. NJLAD Claims**

The NJLAD broadly prohibits discrimination on the basis of several enumerated factors including, *inter alia*, race. *See generally* N.J.S.A. § 10:5-1, *et seq.* Relevant here, the NJLAD

prohibits unlawful discrimination in any place of public accommodation, such that it is unlawful

> "For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, directly or indirectly, to refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges thereof, or to discriminate against any person in the furnishing thereof . . . to the effect that any of the accommodations, advantages, facilities, or privileges of any such place will be refused, withheld from, or denied to any person on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, disability, service in the Armed Forces of the United States or liability for service in the Armed Forces of the United States, or nationality of such person, or that the patronage or custom thereat of any person of any particular race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding status, sex, gender identity or expression, affectional or sexual orientation, disability, service in the Armed Forces of the United States or liability for service in the Armed Forces of the United States, or nationality is unwelcome, objectionable, or not acceptable, desired, or solicited . . ."

N.J.S.A. § 10:5-12(f)(1). Here, Plaintiff alleges that Defendants violated the NJLAD by: (i) discriminating against him in a place of public accommodation; (ii) creating a hostile work environment in a place of public accommodation; and (iii) subjecting him to disparate treatment by denying him service on the basis of his race.[5] (Compl. at 8). The Court considers each category of NJLAD claim in turn.

**a. Discrimination in Public Accommodations (N.J.S.A. §§ 10:5-1 et**

---

[5] Plaintiff purports to bring a claim for "Disparate Treatment" under the NJLAD. (Compl. at 8). In describing the claim, Plaintiff alleges that he was denied service "solely because of Plaintiff's race" and alleges that this is a "clear violation of NJLAD's prohibition on disparate treatment in public accommodations." (*Id.*). It is unclear how Plaintiff's disparate treatment claim differs from his discrimination in public accommodations claim in the instant case. Because Plaintiff does not appear to distinguish between the disparate treatment and discrimination in a public accommodation claims, including in his Opposition and Sur-Reply, Plaintiff's allegations related to "disparate treatment" will be assessed under the public accommodation discrimination claim. *See, e.g.*, *Bradley v. Just Greens, LLC*, No. 19-7162, 2019 WL 4316773, at *4 (D.N.J. Sep. 12, 2019) (noting that it is not clear how a claim of "discrimination" differs from a claim of "disparate treatment" under the NJLAD); *see also Murray-Sims v. N.J. Transit Corp.*, No. 12-1821, 2014 WL 6991906, at *16 (D.N.J. Dec. 10, 2014) (analyzing a claim under the NJLAD for "intentional discrimination (also known as 'disparate treatment')" and noting that "evidence of discrimination is commonly presented in the form of evidence of disparate treatment") (internal quotations and citations omitted).

**seq.)**

To state a claim under the NJLAD for discrimination by a place of public accommodation, a plaintiff must "(1) demonstrate that [he] is a member of a protected class; (2) must show that the defendant's actions were motivated by discrimination; and (3) must demonstrate that others not within the protected class did not suffer similar adverse . . . actions." *Chong v. City of Hoboken*, No. 21-15825, 2022 WL 3357899, at *3 (D.N.J. Aug. 15, 2022) (quoting *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020) (internal quotations and citations omitted)).

Defendant Stavi argues that Plaintiff's claim fails because he does not plausibly allege that the challenged conduct was motivated by discriminatory intent, nor does he allege that individuals outside his protected class were treated more favorably under similar circumstances, as required under the NJLAD. (Stavi Mov. Br. at 17). The Court agrees that Plaintiff has failed to plead facts sufficient to satisfy prong three under the NJLAD: that people outside of his protected group were treated differently.

Plaintiff alleges that the restaurant is a public accommodation under the NJLAD, that the restaurant employees refused Plaintiff service, and that some employees made discriminatory comments referencing his race. (Compl. at 8). The Court will therefore assume, *without deciding*, and for the purposes of this motion only, that Plaintiff has satisfied the first two elements of this claim. Crucially, however, Plaintiff has failed to demonstrate that others outside of his protected class did not suffer similar adverse actions. *Chong*, 2022 WL 3357899, at *3; *see also Florentino*, 2020 WL 5105291, at *14 (dismissing in part because "Plaintiff has failed to allege facts that indicate others outside of her protected class received different treatment."); *Langley v. United Airlines, Inc.*, No. 23-20602, 2024 WL 3219295, at *7 (D.N.J. June 28, 2024) (same). Nor can the

Court reasonably infer that fact from Plaintiff's other allegations. Plaintiff states that he was "the only Uber driver and customer waiting for service" at the restaurant. (Compl. at 5). Indeed, he alleged saying to the employees, "I am the only Uber driver here, and there are no customers or anyone at the drive-thru window." (*Id.*). Nor has Plaintiff alleged that he observed comparators at the subject restaurant on any other occasion. (*See generally id.*). Thus, Plaintiff has failed to establish a plausible entitlement to relief on his "discrimination in public accommodations" claim, and the Court must dismiss that cause of action.

**b. Hostile Environment (N.J.S.A. §§ 10:5-1 et seq.)**

NJLAD claims based on the creation of a hostile environment typically arise in the employment setting. Indeed, here Plaintiff appears to claim that he was subjected to a "hostile environment . . . all while the Plaintiff is working for Uber." (Compl. at 8). Uber, however, is not a party to this case. Nor has Plaintiff alleged any facts suggesting that Uber had any role in creating a hostile work environment for him. Should Plaintiff choose to amend his Complaint, Plaintiff shall clarify why Defendant Stavi or Defendant McDonald's is the proper defendant for this hostile work environment claim when Plaintiff has not alleged that he is an employee of either Defendant.

The Court recognizes that hostile environment claims can also arise outside of the employment setting. Regardless, Plaintiff has failed to plausibly plead a hostile environment claim in either a work or non-work setting. To state a hostile environment claim under the NJLAD, a Plaintiff must allege that the "complained-of conduct (1) would not have occurred but for the employee's protected status; and it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Adams v. City of Newark*, 747 F. Supp. 3d 721, 732 (D.N.J. 2024) (internal quotations and citations omitted) (cleaned up). This is an "in-all-the-circumstances analysis . . .

including a look to the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations and citations omitted). New Jersey courts have applied the same standard for assessing hostile environment claims outside of the work setting too. *See Morris v. Rutgers-Newark Univ.*, 277 A.3d 13, 20 (N.J. Super. Ct. App. Div. 2022) (assessing a hostile educational environment claim under the same standard).

Defendant argues, and the Court agrees, that Plaintiff has failed to plausibly allege a hostile environment claim under the NJLAD. Plaintiff alleges that "[t]he conduct—ignoring Plaintiff, refusing service, and using racial slurs—could constitute creating a hostile environment in a public accommodation." (Compl. at 8). Plaintiff alleges one incident involving use of a single racially offensive remark and refusal of service. But allegations of isolated comments are typically not sufficiently severe or pervasive. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020) (finding that "isolated incidents" of offensive remarks did not rise to the level of severity that would alter working conditions as required for an NJLAD claim). As Defendants correctly argue, Plaintiff has alleged no pattern of conduct, no ongoing harassment, and no sustained hostility. (Stavi Mov. Br. at 21). While courts have found, in some instances, that a single incident may rise to the level of a hostile work environment, Plaintiff has not alleged facts to support the inference that the single incident described here raises to the level of a hostile work environment. *Cf. Taylor v. Metzger*, 706 A.2d 685, 693 (N.J. 1998) (finding that a defendant's remark with an "unambiguously demeaning racial message" was sufficiently severe that a rational factfinder could conclude that it contributed to the creation of a hostile work environment where the remark was uttered by the plaintiff's supervisor and the defendant "indirectly persisted in perpetuating the harassment" following the remark). Plaintiff has failed to plead a hostile environment under the

NJLAD based on his single interaction at the restaurant, and the Court will, therefore, dismiss his "hostile environment" claim.

**ii. Intentional Infliction of Emotional Distress**

To state a claim for IIED, a plaintiff must show "(1) the defendant acted intentionally or recklessly, and intended both to do the act and to produce emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was a proximate cause of the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Jackson v. Paterson Police Dep't*, 804 F. Supp. 3d 469, 488 (D.N.J. 2025) (internal quotations and citations omitted) (cleaned up).

Plaintiff has failed to plausibly allege a claim of IIED. Plaintiff states that he "experienced humiliation, frustration, and potential psychological harm." (Compl. at 8). Plaintiff further states that the "shock, humiliation, and emotional distress caused by being singled out and discriminated against has had a lasting impact on [his] well-being." (*Id.* at 9). Plaintiff fails to articulate the nature of his distress, the nature of the alleged lasting impact on his well-being, or how this distress is such that "no reasonable person could be expected to endure it." *See Jackson*, 804 F. Supp. 3d at 488 (citing *Eivich v. E. Greenwich Twp.*, No. 20-6851, 2021 WL 856883, at *5 (D.N.J. Mar. 8, 2021)). Furthermore, New Jersey courts have held that a single racial slur can be outrageous conduct sufficient to bring an IIED claim only in rare cases. *See Thomas v. U-Haul Co.*, No. 23-21469, 2024 WL 4501566, at *5–6 (D.N.J. Oct. 15, 2024) (citing *Taylor*, 706 A.2d at 696). However, those cases have involved employer-employee or police-civilian relationships, "where one side holds the power[,]" and which are "not akin" to the relationship between customer and retailer. *Id.* In his Opposition, Plaintiff references a post-traumatic stress disorder diagnosis from

July 2025. (Opp. at 3–4). But it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x. 160, 166 (3d Cir. 2018) (citation omitted). Plaintiff's conclusory allegations in the complaint do not satisfy pleading requirements, and thus, Plaintiff's IIED claim must be dismissed.

**iii. Negligent Infliction of Emotional Distress**

To state a claim for NIED, a Plaintiff must show "(1) the defendant owed plaintiff a reasonabl[e] duty of care; (2) a breach of that duty; (3) that the plaintiff suffered severe emotional distress; and (4) that the breach proximately caused the plaintiff's injury." *Jackson*, 804 F. Supp. 3d at 488–489 (internal citations and quotations omitted). Courts have held that the "emotional distress" experienced must be "sufficiently substantial to result in physical illness or serious psychological sequelae." *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F. Supp. 3d 462, 471 (D.N.J. 2019) (internal quotations and citations omitted).

Plaintiff alleges that the employees "owed a duty of care to provide service free from discrimination" and that their "failure to do so could foreseeably cause emotional distress." (Compl. at 8). Plaintiff also alleges that "Defendant's negligent conduct caused foreseeable emotional harm" and that he "suffered significant emotional distress as a result." (*Id.*). These barebones, conclusory statements, which reference the elements of a claim for NIED, but do not elaborate on the factual underpinnings of the allegations, do not establish a plausible entitlement to relief. As discussed, Plaintiff does not elaborate on the nature or extent of his "emotional distress," beyond stating that the experience has had a "lasting impact on Plaintiff's well-being," providing no additional facts about these allegations in the complaint. (Compl. at 10). Without more than this cursory recital of the elements, Plaintiff fails to state a claim for NIED. Thus, the

Court must dismiss Plaintiff's claim for NIED.

**iv. Breach of Contract**

To state a claim for breach of contract under New Jersey law, a plaintiff must plead "(1) the existence of a valid contract; (2) that plaintiff performed under the contract; (3) the defendant's breach of the contract; and (4) damages resulting from the breach." *Liberty Mut. Fire Ins. Co. v. Reade Mfg. Co.*, No. 22-00003, 2023 WL 3597675, at *4 (D.N.J. May 23, 2023) (citing *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. Super. Ct. App. Div. 2017)).

The Court finds that Plaintiff has failed to plead the existence of a valid contract. Plaintiff alleges that he, as "an Uber Eats driver, was engaged in a contractual transaction—retrieving a pre-paid order on behalf of an Uber customer." (Compl. at 6). Plaintiff alleges that he was "engaged in a contractual relationship with Uber Eats and was legally entitled to pick up and deliver a pre-paid order." (Compl. at 10). Plaintiff also references his "contractual right to pick up the food." (Compl. at 9). Plaintiff never alleges any contractual relationship between himself and Defendant. Rather, Plaintiff states that he was an "independent contractor" for Uber and in a "contractual relationship with Uber Eats." (Compl. at 3, 10). Without ever alleging a contract between Plaintiff and Defendant, Plaintiff cannot state a claim for breach of contract. Thus, the Court must dismiss Plaintiff's claim for breach of contract.

**v. 42 U.S.C. § 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a claim under Section 1981, a plaintiff must show "(1) that he belongs to a racial minority; (2) an intent to

discriminate on the basis of race by Defendants; and (3) discrimination concerning one or more of the activities enumerated in § 1981, like making and enforcing contracts." *Foster v. Holiday Hosp. Franchising, LLC*, No. 24-10031, 2025 WL 2267978, at *3 (D.N.J. Aug. 8, 2025) (internal quotations and citations omitted) (cleaned up).

As an initial matter, as discussed above (*see supra* Section (III)(A)(iv)), Plaintiff has not plausibly alleged a contractual relationship with any Defendant. Nor has Plaintiff alleged that Defendant's alleged racial discrimination blocked the creation of a contractual relationship between Plaintiff and Defendant. Plaintiff alleges that "contracts" under Section 1981 "includes transactions in public accommodations (e.g., purchasing food)" and that the "refusal to provide service based on [Plaintiff's] race" violates Section 1981. But Plaintiff does not allege that he purchased food, or attempted to purchase food, from Defendant, or that any kind of contractual relationship existed between Plaintiff and Defendant. *See Chong*, 2022 WL 3357899, at *6 (dismissing Section 1981 claim where the plaintiff failed to allege that he executed a contract with the defendant, was a party to a contract with the defendant, or paid any fee to the defendant for services); *see also Bailey v. One Stop Career Ctr.*, No. 24-11474, 2025 WL 3274856, at *3 (D.N.J. Nov. 24, 2025) (dismissing Section 1981 claim where plaintiff did not allege contractual relationships with defendants and did not adequately allege that she was a third-party beneficiary of an alleged contract between defendant and another party).

Plaintiff has also failed to allege all the required elements of a Section 1981 claim. As discussed above (*see supra* Section (III)(A)(i)), Plaintiff has failed to allege any facts indicating that Defendant "treated Plaintiff differently than others outside of the protected class who were similarly situated." *Langley*, 2024 WL 3219295, at *8 (dismissing a Section 1981 claim, in part, because the plaintiff had not "alleged any facts indicating that Defendants, or anyone else acting

on their behalves, treated Plaintiff differently than others outside of the protected class who were similarly situated"). Thus, Plaintiff's Section 1981 claim must be dismissed for failure to state a claim.

**vi. 42 U.S.C. § 2000a**

Title II of the Civil Rights Act of 1964 provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). A Title II claim requires a plaintiff to demonstrate that he is "(1) is a member of a protected class; (2) attempted to contract for services and afford himself . . . the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside his . . . protected class who received full benefits or were treated better." *Jabri v. Gonzalez*, No. 22-7448, 2024 WL 4719492, at *8 (D.N.J. Nov. 7, 2024) (internal citations and quotations omitted). The Court notes that the exclusive means of redress under Title II is injunctive relief. *Id.* at *9.

Plaintiff's Title II claim fails for the same reasons as his other discrimination claims. Specifically, Plaintiff has failed to plead facts establishing that Defendant Stavi treated him less favorably than similarly situated persons outside his protected class. *See supra* Section (III)(A)(i) and (v). The Court must, therefore, dismiss Plaintiff's Title II claim.

**vii. Improper Service**

Defendant Stavi argues that the Court should dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(5) given Plaintiff's failure to effectuate proper service. (Stavi Mov. Br. at 8). Stavi contends that Plaintiff's attempts to serve it by personally hand-

delivering the Summons and Complaint to a "hiring General Manager, identified as Kevin" and by sending copies of those materials by certified mail were insufficient under the Federal Rules of Civil Procedure. (*Id.*). Stavi recites the requirements for service upon a corporation under Rule 4(h) and relevant New Jersey law. (*Id.* at 9–11). Stavi argues that Plaintiff's attempt at personal service was improper because (i) he is a party with direct interest in the litigation, and thus ineligible to serve process; and (ii) because the individual Plaintiff purportedly served was not authorized to accept service on Stavi's behalf. (*Id.* at 12). Defendant further argues that Plaintiff's attempted service by certified mail was improper, when considered under New Jersey Court Rules. (*Id.* at 13–15; Stavi Reply at 3–8).

District courts have broad discretion when considering whether to dismiss a complaint for failure to effectuate service. *Ceus*, 2020 WL 1986483, at *2. Courts are "'reluctant to dismiss an action' when a plaintiff acts in good faith but fails to effectuate proper service." *Id.* (quoting *Ramada Worldwide Inc.*, 2013 WL 1903295, at *6; *see also Torres v. Unuigbe*, No. 23-2264, 2026 WL 1893503, at *3 (D.N.J. June 30, 2026) (declining to dismiss under 12(b)(5) where *pro se* plaintiff made "repeated efforts to identify and serve Defendant before service was ultimately accomplished"). In opposing Defendant's motion, Plaintiff requests an opportunity to perfect service. (Opp. at 2–3). Plaintiff also argues that Defendant has waived its 12(b)(5) argument, but as Defendant correctly argues on reply, that assertion is demonstrably incorrect. (Opp. at 2; Stavi Reply at 3).

It appears that Plaintiff has still not properly served Defendant Stavi. First, Plaintiff's attempts to serve the summons and complaint *himself* are ineffective, as he is a party in this case. *See* N.J. Ct. R. 4:4-3(a). Second, Plaintiff has not established that "Kevin"—apparently an employee of the restaurant—was authorized to accept service on behalf of Stavi. *See* N.J. Ct. R.

4:4-3(a); N.J. Ct. R. 4:4-4(a)(6). Plaintiff has alleged no evidence that "Kevin" was an "officer, director, trustee or managing or general agent" of Stavi. N.J. Ct. R. 4:4-4(a)(6). Third, to the extent that Plaintiff sought to use certified mail in lieu of personal service, Plaintiff has not established that he couldn't serve in the ordinary manner despite diligent efforts. *See* N.J. Ct. R. 4:4-4(b)(1)(c). Plaintiff did not submit the required affidavit demonstrating that personal service cannot be made. *See* N.J. Ct. R. 4:4-4(b)(1). Finally, to the extent Plaintiff tried to use "optional" mailed service under New Jersey Court Rule 4:4-4(c), Plaintiff has not established that he sent the pleadings to Stavi's correct address.

In light of Plaintiff's *pro se* status and prior efforts to serve Defendant Stavi, the Court will afford Plaintiff another opportunity to perfect that service should he file an amended pleading curing the deficiencies discussed. In the interest of judicial efficiency, however, and mindful of Stavi's notice of and participation in the action, as well as its "duty to avoid unnecessary expenses of serving the summons," Fed. R. Civ. P. 4(d)(1), Stavi shall advise the Court, in writing, whether it will waive formal service of the Summons and Complaint in this matter. The Court will then determine appropriate next steps with respect to Stavi's response to any amended pleading.

**viii. McDonald's Corporation**

Defendant McDonald's argues that Plaintiff's Complaint fails to allege any facts that would apply to Defendant McDonald's. (D.E. 44-1 ("McDonald's Mov. Br.") at 3). Plaintiff does not suggest that Defendant McDonald's employed him. (*See generally* Compl.; McDonald's Mov. Br. at 3). Furthermore, Plaintiff has alleged no facts to support that McDonald's owned, operated, or controlled the restaurant where the incident at issue took place. (*Id.*). Additionally, Plaintiff has alleged no facts suggesting that McDonald's supervised, hired, fired, disciplined, or trained any of the employees at the restaurant at issue. (*Id.*). While Plaintiff attempts to inject additional

facts about McDonald's into the case in his brief in opposition to McDonald's motion to dismiss (e.g., statements about McDonald's delivery system and relationship with Uber), it "'is well-settled . . . that [a party] may not amend [its pleadings] through arguments in [its] brief.'" *Celestine v. Foley*, No. 10-1775, 2010 WL 5186145, at *3 n.5 (D.N.J. Dec. 14, 2010) (quoting *Sepracor Inc. v. Teva Pharm. USA, Inc.*, No. 09–1302, 2010 WL 2326262, * 6 (D.N.J. June 7, 2010)) (brackets in original). As Plaintiff has not alleged any facts in his Complaint demonstrating how McDonald's itself might be liable for the claims at issue, the Court must dismiss his claims against that entity.

## IV. CONCLUSION

For the foregoing reasons, the Motions (D.E. Nos. 13 & 44) are **GRANTED** and Plaintiff's Complaint is **DISMISSED** *without prejudice*. An appropriate Order accompanies this Opinion.

Dated: September 30, 2026

*<u>/s/ Esther Salas</u>*
**Esther Salas, U.S.D.J.**